JOHN FITZGERALD, Respondent, v. HARRIET BEERS et al., Appellants.

St. Louis Court of Appeals, June 5, 1888.

1. EVIDENCE—DRAWINGS AND PLANS.—It is not required that a witness who testifies to his measurements of plastering work, shall produce the tracings or drawings by which he made his measurements.

2. MECHANIC'S LIEN—EXTRA WORK.—Where a subcontractor's contract requires that all extra work shall be first agreed upon in writing by the superintendent and the principal contractor, the subcontractor will be entitled to compensation nevertheless for extra work made necessary by a change of plans and dimensions without his knowledge until after the work was done, and when the principal contractor has absconded and the superintendent refuses to give any writing.

3. BUILDING CONTRACT—OPINION OF WITNESS.—A contract provision requiring that the superintendent's opinion, certificate, report, and decision on all matters shall be binding and conclusive on the principal contractors, does not bind the plaintiff subcontractor to an estimate or opinion given by the superintendent as a witness in the trial of the cause.

APPEAL from the St. Louis Circuit Court, HON. LEROY B. VALLIANT, Judge.

*Affirmed.*

KRUM & JONAS and TAYLOR & POLLARD, for the appellants: The dimensions to be plastered, under plaintiff's contract, could only be proved legally by the introduction of the drawings, plans, and elevations. And inasmuch as his alleged extras, in any event, could only be the excess, in kind, over the contract work, it was impossible to prove legally the extras without proving legally and definitely the amount of contract work. Before secondary evidence can be heard it must appear that primary cannot be obtained. *Davis v. Hilton,* 17 Mo. App. 322 ; *Blondean v. Sheridan,* 81 Mo. 556 ; *Price v. Hunt,* 59 Mo. 258 ; *Washington Co. v. Railroad,* 58 Mo. 378 ; *State v. County Ct.,* 59 Mo. 513. Where parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing ; and in such cases oral testimony, to show what the contract embraced, is rejected. 1 Greenl. on Evid. 275. The contract sued on is explicit that there shall be no charge for extras, unless there is an agreement entered into fixing the amount to be paid therefor before the work is done. Here no such agreement was ever made. The mere fact that J. Strimple & Son left the state, and that Hellmers, the architect, refused to certify as to the value of the alleged extras, after the work was done, is not a sufficient excuse for the court to disregard the obligation of the contract. The plaintiff's contract, among others, contains this provision : " The superintendent's opinion, certificate, report, and decision on all matters to be binding and conclusive on the parties to this contract." Hellmers, the superintendent, was called as a witness by plaintiff, testified and gave it as his opinion, that there were only seventy-five and two-thirds yards

of extra plastering, and no more, which, at thirty-five
cents per yard, amounts to $26.48, and no more. Now,
we insist, if plaintiff was entitled to recover at all for
extras, he was bound by the opinion of the superintend-
ent, and, therefore, this instruction should have been
given.

JAMES L. BLAIR, for the respondent: The appel-
lants' chief ground of error assigned is, that the court
admitted secondary evidence of the contents of written
documents, when the absence of the same was not
accounted for, the documents being the plans and speci-
fications of said building. An examination of the
record will show that the contents of those documents
were not in any sense gone into; nor did the plaintiff
make any such attempt. The plaintiff was asked upon
what data he made his bid; he replied he had tracings
of the plans to take the height and dimensions of the
buildings from. He merely identified certain documents
as being in existence, without going into or being asked
to go into their contents. Such evidence was entirely
competent to go before the jury. *Gas Co. v. City*, 12
Mo. App. 572. The plaintiff is relieved from the obli-
gation of the contract requiring all extra work to be
agreed upon in writing before the same was done, and
the agreement to be signed by Strimple & Son and the
superintendent, for the reason that the changes in the
plans were not brought to his attention until the extra
work was practically completed. Strimple & Son had
run away from the city and could not be found, and Mr.
Hellmers, the supervising architect, declined to sign any
agreement or stipulation, or certify to the amount of
the extra work. The law never requires the doing of
impossible things. That part of the contract which con-
tained the provision that "the superintendent's opinion,
certificate, report, and decision on all matters to be bind-
ing and conclusive on the parties to the contract," could
certainly not be construed to apply to Mr. Hellmers'
testimony given upon the witness-stand. That clause

could have meant nothing else than that during the progress of the work, if any dispute arose with regard to any material to be put into the building, or anything else in connection with it, the superintendent's opinion and decision was to be binding. .

THOMPSON, J., delivered the opinion of the court. .

This action is brought by a subcontractor to enforce a mechanic's lien for certain plastering done by him on an addition to a building owned by the defendant Mrs. Beers. The original contractors made default and the plaintiff recovered a verdict and judgment against them, and also a verdict and judgment establishing his claim as a lien. The only struggle in the case related to the right of the plaintiff to establish his lien for such of the items in the account filed with his claim of lien as related to extra work, alleged by him to have been rendered necessary by changes made in the plans and specifications of the building, by the owner, the architect, and the original contractor. That such changes had been made and that he did a certain amount of extra work was uncontroverted. But the controversy was as to the amount of extra work rendered necessary by the changes, and as to whether he was entitled to any lien at all for the extra work. It stands in part admitted and in part proved without controversy, that he did all the plastering upon the building, under his contract with the original contractors for the erection of the building, who were J. Strimple & Son; that his work was well done; that the reasonable value of it was thirty-five cents per square yard, and that this reasonable value was not in excess of the price contracted for. J. Strimple & Son, the original contractors, after paying the plaintiff two thousand dollars, on account, absconded and left him and other contractors in the lurch as to what was due them. The plaintiff recovered a judgment by default against the original contractors, as previously stated, and also a judgment establishing his lien for so much of the agreed contract price of the work as

remained unpaid, and also for the extra work claimed by him. From this judgment the defendant Mrs. Beers and her husband prosecute this appeal.

I. The first error which the appellants assign is, that the plaintiff was allowed to testify, for the purpose of proving the amount of extra work done by him, that he had used as the basis of his measurements tracings from the original plans annexed to the principal contract between Mrs. Beers and J. Strimple & Son, without requiring him to produce these tracings. The theory of this objection is, that the plans themselves were primary evidence of the facts testified to by the witness. We do not think that this objection is well taken. The plaintiff did not testify or offer to testify as to the contents or character of the tracings of the plans. He merely alluded to them in explaining the manner in which he had made his computations. Nevertheless, the defendants Beers could have put the plans, elevations, and drawings in evidence, if they had desired to do so for the purpose of showing that computations made from them as a basis would not have produced the result stated by the plaintiff in his testimony. This is not a case where a party seeks to prove the contents of a written instrument by secondary evidence. The plaintiff did not seek to prove by oral testimony the contents or character of the tracings. On this point counsel for the plaintiff has furnished us with an apt illustration of what seems to be the correct view ; which is, to suppose that the plaintiff, instead of testifying as he did, had testified that he made the measurements with a yardstick belonging to the defendants. Would it have been necessary to procure their yardstick and offer it in evidence ? Nor is this a case where oral evidence is introduced to vary a contract which parties have made. Both the original and the subcontract provided for extra work, and the question was as to the amount of the extra work which was in fact done. Moreover, before any objection had been made to this line of evidence, the defendants themselves drew out similar evidence on the cross-examination of Mr. Hellmers, their own architect and

superintendent, who had been called as a witness by the plaintiff. He made his statement of measurements of the extra work done by the plaintiff which had been rendered necessary by an enlargement of the basement and closets after the making of the original plan and specifications, and his measurements, as well as those made by the plaintiff, were necessarily based on the plans and elevations.

II. The next assignment of error is, that the court erred in allowing evidence to be introduced touching the extras sued for. The subcontract which is the foundation of the action contained the following provision : " The superintendent, or J. Strimple & Son, shall be at liberty to make any deviation from, or alteration in, the plans, form, construction, detail and execution described by the drawings and specifications, without invalidating or rendering void this contract ; and in case of any difference in the expense, an addition to or abatement from the contract price shall be made, and the same shall be determined by the architect, or J. Strimple & Son. And in case any such alteration or change shall be made or directed by the superintendent or owner as aforesaid, in the plans, drawings and construction of the aforesaid plastering, and in case of any omission or addition to said plastering being required by said superintendent or owners, the cost and expense thereof is to be agreed upon in writing, and such agreement is to be signed by said parties of the second part and party of the first part and the superintendent, before the same is done or before any allowance therefor can be claimed ; and in case of any failure so to agree, the same shall be completed upon the original plan."

The original contract between Mrs. Beers and J. Strimple & Son contained in like manner a clause requiring the costs of any alterations to be agreed upon in writing beforehand and signed by J. Strimple & Son and the superintendent and making the superintendent's opinion, certificate, report and decision on all matters, binding and conclusive on J. Strimple & Son.

No express agreement for the doing of extras, such as is provided for in the above subcontract, was ever made. The extra work was rendered necessary by increasing the height of the rooms and making other alterations. This was done without the knowledge of the plaintiff and without notifying him of the same, so far as appears. His contract with J. Strimple & Son was to do the whole plastering for a round sum. As it was a large job and he wanted to keep his hands employed, he had carefully estimated from the specifications the amount to be done, and had bid a low figure for the job. He had, practically completed the job before he knew of the changes by reason of which he was doing more work than his original estimate required. The defendants Beers, by enlarging the height of the rooms and making other changes, increased the amount of the plastering to be done, allowed the plaintiff to go on with his job and received the benefit of the extra work which he did. This was a waiver on their part of the right to demand a strict compliance with the provision of a subcontract requiring the cost and expense of any alterations to be agreed upon in writing. Then, the evidence shows without contradiction that after J. Strimple & Son had left the city, the plaintiff made seasonable application to the architect to fix the quantity and price of this extra work, which he refused to do. It is now argued that as by the terms of the contract sued on, the price of the extra work was to be agreed upon in writing with J. Strimple & Son, and as they had absconded, it could not have been agreed upon according to the terms of the contract, and the court cannot set aside this provision of the contract. This does not seem to be a reasonable view to take of the matter. The plaintiff could not have been at fault for not insisting upon an agreement between the defendants' architect and the principal contractors before they left the state, because he did not then know that the alterations had been made under which he was doing more work than his contract contemplated. After J. Strimple &

Son had absconded, he could not procure their written agreement in respect of the extra work. Is he, therefore, to lose his mechanic's lien for it while the defendants get the benefit of the work? The mechanic's lien law is to be reasonably and remedially construed for the purpose of accomplishing its objects, and under it the law certainly will not drive a subcontractor to do an impossible thing.

III. The next contention of the appellants seems to be still more untenable. Notwithstanding the defendants' architect refused the application of the plaintiff to state in writing or agree with him as to the price of the extra work, or to certify to the measurement of the same, it is now claimed that, under the last clause of the contract above quoted, the plaintiff is bound by the estimate which the defendants' architect subsequently made, and which he delivered for the first time, so far as appears, while testifying as a witness upon the trial of this cause; and the defendants asked, and the court refused, an instruction to this effect. This was no error. Having allowed him to go on with the work without informing him of the changes which entailed the doing of extra work, and having then, after the absconding of the principal contractors, refused to enter into an agreement with him as to the amount of the extra work, or the price thereof, it is too late for them now to claim that he is bound under the contract by the statements of their architect delivered upon the witness-stand.

IV. If we are right in the foregoing views, the trial court committed no error in giving the following instruction at the request of the plaintiff:

"6. The court instructs the jury that if they find, from the evidence, that the defendants, Joab Strimple and Benjamin F. Strimple, under the style of J. Strimple & Son, entered into the contract in evidence with defendants Harriet Beers and George S. Beers, to build for them, including the plastering and cornicing, the building known as Hotel Beers Addition; that afterwards the plaintiff entered into the contract in evidence

with said Strimple & Son to furnish the labor and material necessary for the plastering and cornicing of said building under said original contract, and that afterwards certain alterations were made in the plans, so that the amount of labor and material necessary to complete said building in accordance therewith was increased ; that such deviation or alteration was made without the knowledge of plaintiff, and was unknown to him until after most of said work was finished ; that he requested the said Hellmers to agree with him in writing as to the amount and cost of said additional work and labor, and that the said Hellmers failed and refused to do so ; and that the said Strimples had absconded from the city of St. Louis, and plaintiff was, therefore, unable to obtain from them a written agreement, as required by said contract, then the jury will find for the plaintiff for the reasonable value of said additional work, with interest from February 10, 1887.   And if they further find that within four months after the completion of said work, plaintiff filed in the office of the clerk of the circuit court of the city of St. Louis a just and true account of said indebtedness due him, after allowing all just credits, giving the names of the contractors and owners and a full description of the property, verified by affidavit, and that, more than ten days before the filing of said account, plaintiff gave a written notice to the defendants, Harriet Beers and George S. Beers, Ephraim G. Obear and Meyer A. Rosenblatt, which notice contained a true statement of said demand, the amount thereof, from whom due, and a true description of the premises on which the lien was claimed, and of the plaintiff's intention to file such lien, and that this suit was commenced within ninety days after the filing of said lien, then their verdict should be that the plaintiff is entitled to a lien upon the property described in the petition, for the reasonable value of said additional work, with interest from February 10, 1887.''

It was supported by substantial evidence, well drawn, and correct in point of law.

The judgment is affirmed.   All the judges concur.